# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH LEE,<br><br>    Plaintiff,<br>vs.<br>DEL MAR THOROUGHBRED CLUB, a California Corporation; STATE OF CALIFORNIA, 22ND AGRICULTURAL DISTRICT; and DOES 1 through 50, inclusive,<br><br>    Defendants. | CASE NO. 12cv826-WQH-BLM<br><br>ORDER |

HAYES, Judge:

The matter before the Court is the Motion for Summary Judgment or, in the Alternative, Summary Adjudication ("Motion for Summary Judgment"), filed by Defendants Del Mar Thoroughbred Club ("DMTC") and State of California, 22nd Agricultural District ("District"). (ECF No. 76).

## I.  Background

On February 3, 2011, Plaintiff Joseph Lee filed a Complaint against DMTC in San Diego Superior Court, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*; the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, *et seq.*; and the California Disabled Persons Act, Cal. Civ. Code §§ 54, *et seq.* (S.D. Cal. Case No. 11cv459-WQH-BLM, ECF No. 1). The Complaint alleged that DMTC denied Plaintiff the right to park in designated handicapped accessible parking spaces located adjacent to the Del Mar Race Track entrance. On March 4, 2011, DMTC removed the action to this Court. *Id.* On May 12, 2011, the parties filed a Joint Motion to Dismiss the

action with prejudice, which the Court granted on May 17, 2011. *Id*., ECF Nos. 7, 9.

On April 4, 2012, Plaintiff initiated the above-captioned action against DMTC in this Court. (ECF No. 1).

On May 2, 2013, Plaintiff filed the First Amended Complaint, which is the operative pleading. (ECF No. 55). In the First Amended Complaint, Plaintiff named the DMTC and the District as Defendants. Plaintiff alleges he suffers from "partial paralysis ... and other ailments that significantly impair his ability to walk without a mobility aid." *Id*. ¶ 2. Plaintiff alleges that he has been attending the Del Mar Race Track on an almost daily basis for more than 20 years. *Id*. ¶ 9. Plaintiff alleges that he returned to the Del Mar Race Track in mid-June 2011 after Plaintiff settled his prior lawsuit with DMTC and "discovered that the handicapped spaces adjacent to the race track entrance had been modified and re-configured." *Id*. ¶ 11. Plaintiff alleges that Defendants "had constructed and/or installed into the plane of the handicapped parking spaces metal posts to which were attached blue handicapped parking signs. However, the posts were installed approximately 2+ feet forward of the back end of each parking space, so that Plaintiff's vehicle, which is 22 feet long, ... is unable to fit within the designated space...." *Id*. Plaintiff alleges that the "installation of the vertical signs in this manner was and is totally arbitrary, capricious, and/or blatantly discriminatory." *Id*. Plaintiff alleges four causes of action against each Defendant: (1) violation of the ADA by "denying Plaintiff the use of disabled accessible parking spaces"; (2) retaliation in violation of the ADA for "modifying existing ADA-compliant parking facilities in a manner to specifically exclude Plaintiff and his vehicle from being able to park in the handicapped parking spaces"; (3) violation of the Unruh Civil Rights Act by discriminating against Plaintiff "in respect to provision of handicapped parking"; and (4) violation of the Disabled Persons Act by discriminating against Plaintiff "in respect to provision of handicapped parking." *Id*. ¶¶ 14, 17, 22, 25. Plaintiff seeks injunctive relief, statutory damages, "general damages in the amount of $2 million," and punitive damages. *Id*. at 14.

On January 21, 2014, Defendants filed the Motion for Summary Judgment,

accompanied by a Separate Statement of Material Facts, three declarations and exhibits. (ECF No. 76). Defendants request summary judgment as to each of the causes of action in the First Amended Complaint. Defendants contend:

> With respect to DMTC, DMTC does not own the property (parking lot/handicapped spaces) alleged in Plaintiff's [First Amended Complaint]. DMTC did not modify and had no control over any changes/modifications made to the property referenced in Plaintiff's [First Amended Complaint], other than requesting the parking spaces be ADA compliant. Regardless, any changes made by District are not in violation of the law as the changes comport with and are required by law. Neither DMTC nor District did anything to allegedly retaliate against Plaintiff. District was not a defendant in the prior lawsuit filed by Plaintiff. Regardless, Plaintiff has released both Defendants from liability in this litigation.

(ECF No. 76-1 at 5).

On February 12, 2014, Plaintiff filed an opposition to the Motion for Summary Judgment, accompanied by a Separate Statement of Disputed Material Facts, and declarations. (ECF Nos. 78, 79, 80). Plaintiff requests that the Motion for Summary Judgment be denied in its entirety. Plaintiff contends that "triable issues of fact exist as to all causes of action" in the First Amended Complaint, and Defendants have "not made an adequate showing to escape trial." (ECF No. 78 at 10). Plaintiff contends that "triable issues exist as to whether or not it is feasible and/or required for Defendants to make an allowance for Plaintiff's 22-foot Supervan." *Id.* at 9. Plaintiff contends that the allegations of the First Amended Complaint relating to "improper signage and/or pole placement" are "entirely a different set of operative facts" than Plaintiff's prior suit against DMTC, which alleged that DMTC "improperly denied [Plaintiff] the right of access to the handicapped parking altogether." *Id.* at 6-7.

On February 20, 2014, Defendants filed a reply in support of the Motion for Summary Judgment, accompanied by a declaration from defense counsel and objections to Plaintiff's evidence. (ECF No. 81).

On April 2, 2014, the Court issued an Order stating that Plaintiff may file a response to the evidence and objections accompanying Defendants' reply. (ECF No. 85).

On April 9, 2014, Plaintiff filed an objection to the declaration of Defendants' expert witness. (ECF No. 86).

On April 11, 2014, the Court conducted oral argument on the Motion for Summary Judgment. (ECF No. 87).

**II.  Evidence**

Defendants submit the Declaration of Tim Read, Vice-President of Operations of the DMTC. (ECF No. 76-7). Read states:

> DMTC does not own the property (parking lot/handicapped spaces) alleged in Plaintiff's Complaint. DMTC had no control over the decision to make changes/modifications to the property referenced in Plaintiff's Complaint. The 22nd District Agricultural Association ('District') owns and maintains the property that is the site of the Del Mar Thoroughbred Horse Race Meet. The District on its own decided to make modifications to the spots. DMTC had no involvement in and did not influence the alleged redesign/modifications of the handicapped spaces alleged in Plaintiff's Complaint besides requesting that, if modifications were made, the modifications were ADA compliant.
>
> The modifications to the subject parking spaces were made by the District during a time that the DMTC was not leasing the premises for the Del Mar Thoroughbred Horse Race Meet. At the time of the subject parking lot modification, District was responsible for all facility or infrastructure maintenance, repairs, new construction, or alterations including painting, landscaping, and repair work necessary to keep the facilities and infrastructure in a safe operational and presentable condition.

*Id*. ¶¶ 5-6.

Defendants submit the Declaration of Greg Izor, a licensed California Architect and Certified Access Specialist. (ECF No. 76-8). Izor states that on March 1, 2013, he visited the premises and inspected and measured the parking spaces at issue in this litigation. *Id*. ¶ 5. Izor states:

> The subject disabled parking spaces near the Stretch Run Entrance (area at issue in this litigation) measure a minimum of 18 feet long and 9 feet wide; with a 5-foot wide access aisle for standard spaces and 8-foot wide access aisle for van accessible spaces. The pole mounted identification signage is located at the front of each disabled parking space and centered on the space. The location of the pol[e] signs is at the required location at the front edge of the vehicles space and not located inside the common access aisle that runs along the front of the spaces. The signage is mounted at a minimum 80 inches above finished paving and is of the correct color, size and wording.

*Id*. Izor states that California Building Code ("CBC") Section 1129B.3 "provides that the disabled space shall provide a 9-foot parking area and 5-foot loading and unloading access aisle. CBC Section 1129B.3 provides a minimum length of 18 feet for each

parking space." *Id.* ¶ 6. Izor states that CBC Section 1129B.4 "provides specific requirements for the signage identifying the disabled parking spaces," including that the space be identified with a sign permanently posted immediately adjacent to each space. *Id.* ¶ 7. Izor states:

> Based on my review of the material in this matter and my personal site inspection, it is my opinion and belief that the dimensions and signage of the subject spaces are ADA compliant. As required by CBC Section 1129B.3, the length of the parking space is 18 feet long. Disabled parking need not accommodate a 22-foot long vehicle as only a minimum of 18 feet long is required.
>
> As required by CBC Section 1129B.4 identification of the disabled parking spaces is required. The metal posts are appropriately positioned at the front of each disabled space, centered on the space, adjacent and visible from each space. Moreover, the signage is mounted a minimum of 80 inches above the finished paving and is of the correct color, size and wording. The pole-mounted identification signage at each disabled parking space is in full compliance with all applicable accessibility requirements and located in the correct location.
>
> In my opinion, if the pole mounted signage was removed or placed farther back (as plaintiff would like), the disabled spaces would no longer comply with accessibility requirements. Removal or movement of the poles would allow a driver of a vehicle to park a portion of his/her vehicle inside the common access aisle that runs along the front of the spaces, thereby blocking the access aisle for other disabled persons' use. Removal of the poles/signage is not an option nor is it allowed under the law.

*Id.* ¶¶ 8-10.

Defendants submit excerpts from Plaintiff's deposition. (ECF No. 76-6). Plaintiff testified that his complaints in this action are all related to the location and placement of the metal signage poles at the back end of the handicapped parking spaces in the Del Mar Race Track parking lot. *See id.* at 5-9. Plaintiff testified that he and his lawyer signed a settlement agreement in the prior lawsuit in April of 2011, after Plaintiff had a chance to discuss the settlement with the Magistrate Judge at an early neutral evaluation conference. *See id.* at 10-15. Defendants submit a copy of the General Release and Settlement of Claim signed by Plaintiff on April 25, 2011, which settled Plaintiff's previous lawsuit against the DMTC. (ECF No. 76-4 at 20-21).

Plaintiff submits the Expert Witness Disclosure of Martin Balaban, a consulting engineer and licensed Safety Engineer retained by Plaintiff. (ECF No. 78-2 at 8-13).

Balaban states that he reviewed the pleadings, discovery documents and "photographs taken by Plaintiff depicting the handicapped parking at the Race Track at various points in time." *Id*. at 10. Balaban states:

> In June, 2011, Plaintiff discovered that the handicapped spaces provided to the race track entrance were not long enough to accommodate and permit legal parking of his E250 Super Van, due to the fact that such spaces had been designed, constructed and installed in such a manner that his Van was not able to fit in the spaces in a way that allowed proper rear and/or side clearance. Instead, upon parking in the handicapped space(s); Mr. Lee's 22 foot E350 Super Van would protrude 2 feet beyond the vertical parameters of the handicapped in that location.
>
> As a consequence, Mr. Lee was forced on such occasion to refrain from using the handicapped parking in the west lot altogether, and thereby he was not able to attend meet event at the Del Mar Race Track....
>
> Failure to provide Plaintiff access to handicapped parking by virtue of his status as a disabled veteran, without appropriate ADA accommodations, amounts to a violation of the statute in the aforementioned location.

*Id*. at 11-12.

Plaintiff submits the Declaration of Lawrence H. Nemirow, who was Plaintiff's previous attorney. (ECF No. 78-2 at 5-6). Nemirow was Plaintiff's attorney of record on June 18, 2012, when he met with defense attorneys at the Del Mar Race Track and "observed that the parking spaces did not have handicapped parking signs in front of the spaces, that there was not any sign indicting van accessability, and that the spaces were too small for rear loading and unloading of wheel chairs." *Id*. at 5.

In reply, Defendants submit the Declaration of Shiva E. Stein, Defendants' attorney, who states that she met with Nemirow on June 18, 2012 at the Del Mar Race Track for a site inspection of the disabled parking spaces at issue. (ECF No. 81-2). Shiva states that she informed Nemirow that "it was County Fair season and as such the subject location was not in the same condition as it would be during the racing season," and "the subject location was not being used as a parking lot and had been transformed for use in the County Fair." *Id*. ¶ 3. Shiva attaches photographs of the area which she took during the June 18, 2012 site visit. *Id*. ¶ 5, Ex. A. Shiva states that at the site inspection she observed that Nemirow did not have a tape measure or ruler and did not take any measurements of the area. *Id*. ¶ 4.

## III. Standard of Review

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). Where the party moving for summary judgment does not bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542-43 (9th Cir. 1989) ("[O]n an issue where the plaintiff has the burden of proof, the defendant may move for summary judgment by pointing to the absence of facts to support the plaintiff's claim. The defendant is not required to produce evidence showing the absence of a genuine issue of material fact with respect to an issue where the plaintiff has the burden of proof. Nor does Rule 56(c) require that the moving party support its motion with affidavits or other similar materials negating the nonmoving party's claim.") (quotation omitted).

If the moving party meets the initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the nonmoving party's

position is not sufficient."). The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotations omitted). The nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *See Anderson*, 477 U.S. at 256.

## IV.  Objections to Evidence

Defendants object to the statement in Nemirow's declaration that "the [parking] spaces were too small for rear loading and unloading of wheel chairs." (ECF No. 78-2 at 5). Defendants contend that "Nemirow's opinion lacks personal knowledge, competence, lacks foundation, and is an improper opinion/legal conclusion by lay witness." (ECF No. 81-1 at 2). Plaintiff was given an opportunity to respond to Defendants' objection, but elected not to respond. (ECF No. 85).

The Court finds that Plaintiff fails to lay a foundation that Nemirow, Plaintiff's former attorney, is an ADA expert, a disabled parking expert, or a code enforcement expert. Plaintiff has failed to produce evidence indicating that Nemirow took any measurements of the parking spaces. Plaintiff has failed to lay an adequate foundation for Nemirow's opinion that the parking spaces "were too small for rear loading and unloading of wheel chairs." (ECF No. 78-2 at 5). Defendants' objection to the Nemirow declaration is sustained. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see also Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995) ("[T]he [plaintiffs]' response to [defendant]'s evidence was information and belief declarations from their counsel. Those were entitled to no weight because the declarant did not have personal knowledge.").

Defendants object to the Expert Witness Disclosure of Balaban in its entirety, and, in particular, Balaban's opinion that "[f]ailure to provide Plaintiff access to handicapped parking by virtue of his status as a disabled veteran, without appropriate ADA

accommodations, amounts to a violation of the statute in the aforementioned location." (ECF No. 78-2 at 12). Defendants contend that "[t]he Expert Disclosure is inadmissible as it lacks foundation, has not been authenticated, is unreliable (as it is was not made under penalty of perjury), is inadmissible hearsay, lacks personal knowledge, competency, and fails to provide factual or legal basis to support Balaban's various opinions." (ECF No. 81-1 at 2). Plaintiff was given an opportunity to respond to Defendants' objections, but elected not to respond. (ECF No. 85).

The Court finds that Plaintiff has failed to show that Balaban ever visited the site at issue or reviewed the defense expert's declaration. Plaintiff has failed to show that Balaban ever learned or considered the actual size and dimensions of the parking spaces at issue. For this reason, Balaban's opinions are not adequate to create a genuine issue of material fact to preclude summary judgment. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1222 (9th Cir. 1995) ("[Plaintiff]'s entire case rests precariously on the opinion of its expert ... who never examined the allegedly defective circuit breaker. This substantially impaired his ability to express a reliable expert opinion based upon specific facts. Therefore, we find that [the] expert opinion and the inferences [plaintiff] seeks to draw from it are not of sufficient quantum or quality to create genuine issues of material fact."). In addition, Balaban, who is a "consulting engineer" and "licensed Safety Engineer" (ECF No. 78-2 at 14), does not advance an adequate foundation for his expertise in the field of ADA access compliance and does not state the basis for his conclusory legal opinion that Defendant violated the ADA. *See* Fed. R. Civ. P. 56(c)(4); *see also Nat'l Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997) ("Conclusory allegations ..., without factual support, are insufficient to defeat summary judgment."). Defendants' objections to the Balaban Expert Witness Disclosure are sustained.

Plaintiff objects to the declaration of Greg Izor, Defendants' expert witness, which was included in Defendants' moving papers filed on January 21, 2014. (ECF No. 86). Plaintiff objects to Izor's statement that "I understand that the signage placement and

1  dimensions of the subject parking lot spaces, at the time of my visit [on March 1, 2013],
2  were in the same condition as they were in July of 2011, the time period Plaintiff claims
3  he was unable to park in the subject spaces." (ECF No. 76-8 at 2). Plaintiff objects that
4  Izor does not lay a foundation as to this statement, "and [Izor] does not refer to any facts
5  or evidence establishing what condition the subject parking lot spaces were in at the time
6  of Plaintiff's July 2011 visit to the race track premises." (ECF No. 86 at 2-3).

7  Izor states in his declaration that, in addition to performing a site visit on March
8  1, 2013, he reviewed Plaintiff's deposition transcript and all exhibits, Plaintiff's First
9  Amended Complaint and DTMC's initial disclosures. (ECF No. 76-8 at 2). Plaintiff
10 presents no evidence indicating that, on March 1, 2013, the area was not being used as
11 a parking lot or that the dimensions of the parking spaces had been altered between
12 March 1, 2013 and July of 2011. The Court finds that the Izor declaration advances an
13 adequate foundation for offering opinions concerning the dimensions and signage of the
14 parking spaces at issue. Plaintiff's objection to Izor's declaration is overruled.

## V.   Discussion

16  The ADA states that it is not to be "construed to invalidate or limit the remedies,
17 rights, and procedures of any ... law of any State ... that provides greater or equal
18 protection for the rights of individuals with disabilities than are afforded by this chapter."
19 42 U.S.C. § 12201(b). With respect to the dimensions and signage of disabled parking
20 spaces, the California Building Code requirements are more stringent than the
21 requirements of the ADA Standards for Accessible Design. *Compare* Cal. Building Code
22 §§ 11B-502.1-11B-503.6 (2013), *with* 28 C.F.R. Pt. 36, App. A § 4.6. "Where California
23 access standards provide greater accessibility than the ADA, the California standards
24 control." *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 867 (N.D. Cal. 2011); *see*
25 *also Shimozono v. May Dep't Stores Co.*, No. 00-4261-WJR, 2002 WL 34373490, at *16
26 (C.D. Cal. Nov. 20, 2002) (same); *Lieber v. Macy's West, Inc.*, 80 F. Supp. 2d 1065, 1074
27 (N.D. Cal. 1999) (same).

28  Defendants have satisfied their initial burden of "'showing'—that is, pointing out

to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. In response, Plaintiff has produced no evidence indicating that, when the area at issue is being used as a parking lot,[1] the dimensions and signage of the disabled parking spaces fail to comply with the applicable provisions of the California Building Code. The only evidence as to the dimensions and signage of the parking spaces—Izor's declaration—indicates that the dimensions and signage of the disabled parking spaces complied with all applicable provisions of the California Building Code. (ECF No. 76-8 ¶¶ 5-9). Plaintiff has failed to submit admissible evidence demonstrating that the California Building Code, as applied to this case, violates the ADA or any other law. Plaintiff has failed to produce admissible evidence that if the pole-mounted signage was removed or placed farther from the spaces to accommodate Plaintiff's 22-foot van, the disabled spaces would still comply with the applicable accessibility requirements as set forth in the California Building Code. The only evidence addressing this subject is Izor's declaration, which states that the disabled spaces would no longer comply with the applicable accessibility requirements as set forth in the California Building Code if the pole-mounted signage was removed or placed farther from the spaces. (ECF No. 76-8 ¶¶ 9-10).

With respect to Plaintiff's retaliation claim, Plaintiff has failed to produce evidence indicating that either Defendant designed the parking spaces at issue because of Plaintiff's prior lawsuit against the DMTC, or for any other retaliatory motive. *Cf.* 42 U.S.C. § 12203(a) (requiring a plaintiff claiming retaliation pursuant to the ADA to prove that defendant "discriminate[d] against [plaintiff] because [plaintiff] has opposed any act or practice made unlawful by this Act").

---

[1] Plaintiff's former counsel states that on June 18, 2012, "the parking spaces did not have handicapped parking signs in front of the spaces, ... there was not any sign indicating van accessability, and ... the spaces were too small for rear loading and unloading of wheel chairs." (ECF No. 78-2 at 5). Defendants respond with evidence that on June 18, 2012, the area at issue was not being used as a parking lot, and had been transformed for use in the San Diego County Fair. (ECF No. 81-2). The Court finds that the declaration of Plaintiff's former counsel is not probative of the condition of the area at issue during the time when the area is being used as a parking lot.

The Court finds that Defendants are entitled to summary judgment as to each of the causes of action in Plaintiff's First Amended Complaint.[2]  The Court does not reach Defendants' alternative contention that Plaintiff's executed release in the prior lawsuit precludes this lawsuit.

**VI.  Conclusion**

IT IS HEREBY ORDERED that the Motion for Summary Judgment is GRANTED.  (ECF No. 76).  The Clerk of the Court shall enter Judgment in favor of Defendants and against Plaintiff.

DATED: April 17, 2014

**WILLIAM Q. HAYES**
United States District Judge

---

[2]  Even if the Court did not consider the Izor declaration for any purpose, the Court finds that summary judgment would be appropriate because Defendants satisfied their initial burden of "pointing out ... [the] absence of evidence supporting the nonmovant's case," and Plaintiff failed to "go beyond the pleadings and ... designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324-25 (quotation omitted).